## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **J A C Q U E L Y N E   L A M A R R   a n d**<br>**DORETTA WAGNER, Individually and**<br>**on Behalf of All Others Similarly**<br>**Situated,** | )<br>)<br>)<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| **v.** | )<br>) |
| **I L L I N O I S   B E L L   T E L E P H O N E**<br>**COMPANY; AT&T MIDWEST; and**<br>**AT&T NATIONAL,** | )<br>)<br>)<br>) |
| **Defendants.** | )<br>)<br>) |

### CLASS ACTION AND COLLECTIVE ACTION COMPLAINT

Plaintiffs, Jacquelyne "Jackie" LaMarr and Doretta Wagner, individually and on behalf of all others similarly situated, for their Class Action and Collective Action Complaint against Defendants Illinois Bell Telephone Company, AT&T Midwest, and AT&T National (collectively, "Defendants"), state as follows:

**Nature of Plaintiffs' Claims**

1. This is a collective action under the Fair Labor Standards Act ("FLSA") and a Rule 23 class action under the Illinois Minimum Wage Law ("IMWL") and the Wage Payment and Collection Act ("IWPCA") involving call center employees who were not paid by Defendants for all time worked. Defendants failed to pay for all time worked by Plaintiffs

and the putative class, depriving these employees of their earned straight time and overtime wages. As of September 30, 2015, approximately 18 employees have consented to participate in this action; copies of their consent forms are attached to this Complaint as Group Exhibit 1.

**Jurisdiction and Venue**

2. This Court has original federal question jurisdiction under 28 U.S.C. §1331 for the claims brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. This Court's supplemental jurisdiction over Plaintiffs' state law claims is required pursuant to 28 U.S.C. § 1367, because those claims are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. This Court has personal jurisdiction over the Defendants for reasons that include:

(a) Defendants conduct business and enter into contracts within the State of Illinois and in this District and with businesses located within the State of Illinois and in this District;

(b) As more specifically pled below, Defendants purposefully originated, implemented and controlled the wage and hour policies and practices that gave rise to the FLSA claims asserted herein, and Defendants purposefully directed their improper wage and hour policies and practices at residents of the State of Illinois and their employees who reside in this District, among other people;

(c) Defendants have purposefully directed the marketing of their telephone services at residents and businesses located in the State of Illinois; and

(d) Defendants purposefully solicit Illinois residents to enter into service agreements.

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants have offices, conduct business, and can be found in the Northern District of Illinois, and the causes of action set forth herein have arisen and occurred in part in the Northern District of Illinois.

**Parties**

>  *i.*      ***Plaintiffs***

5.  Plaintiffs LaMarr and Wagner are residents of Cook County, Illinois and have worked as employees for Defendants for approximately 16 years.   LaMarr and Wagner have been compensated as hourly paid non-exempt employees of Defendants in this District during the applicable FLSA statute of limitations period.   A copy of Plaintiffs' consent forms are attached hereto as Group Exhibit 1.

>  *ii.*      ***Illinois Bell Telephone Company, Inc.***

6.  Illinois Bell Telephone Company ("the Company") is an Illinois corporation doing business as a telecommunications firm in the Chicago, Illinois area, with over 1,000 employees.  The Company also does business under the name "AT&T Illinois".

7.  At all times between May 27, 2011 through the present, the Company was engaged in the business of, among other things, operating a call center in Arlington Heights, Illinois, specifically engaged in the activity of "customer retention", i.e., attempting to retain current customers of the Company and certain related affiliates of the Company who subscribe to various internet and/or telephone services provided by the Company.

8. At all relevant times, the Company was the "employer" of Plaintiffs and members of the putative class, as the term "Employer" is defined under the FLSA, the IMWL and the IWPCA.

### iii.    Other Defendants

9. "AT&T Midwest" is an assumed name used to refer to a group of entities consisting of the Company; Indiana Bell Telephone Company, Inc. (an Indiana corporation); AT&T Teleholdings, Inc. (a Delaware corporation, which is also known individually as "AT&T Midwest"); and AT&T Services, Inc. (a Delaware corporation, formerly known as SBC Services, Inc.).

10. "AT&T National" is an assumed name used to refer to a group of entities consisting of AT&T Corp. (a New York corporation) and AT&T Operations, Inc. (a Delaware corporation) .

11. Together, AT&T Midwest and AT&T National employed Plaintiffs and the putative class members (as well as other employees), and were the "employer" of Plaintiffs and members of the putative class, as the term "Employer" is defined under the FLSA, the IMWL and the IWPCA.

12. Defendants directed, implemented and controlled the wage and rounding policies and practices at issue in this lawsuit. Further, Defendants ratified and implemented the wage and rounding policies and practices used on Plaintiffs and the class members.

### Factual Background

13. Plaintiffs have worked as call center employees for Defendants, along with hundreds of other call center employees employed by the Defendants during the last three years.

14.   Plaintiffs' and their co-workers' duties include speaking via telephone with customers, former customers and potential customers of Defendants' internet services and telephone services.

15.   Plaintiffs and their co-workers arrive for work in the morning, and use a key card to obtain entry to the office building at which they work for Defendants.

16.   Plaintiffs and their co-workers typically begin the process of logging on to various computer programs they use in their duties, several minutes prior to the beginning time of their scheduled shift time.

17.   Plaintiffs and their co-workers are expected by their employers to be ready and available to receive telephone calls at the beginning of their scheduled shift time, by turning on their mechanical equipment and by logging onto and operating a variety of software programs used in their work (herein, their "ready and available" status).

18.   Plaintiffs and their co-workers are carefully monitored by Defendants' supervisors to determine their readiness for work at the beginning of their scheduled shift times.

19.   Defendants required that Plaintiffs must log out of their "ready and available" status for both their two fifteen-minute breaks and their meal break, each shift that they work.

20.   Defendants require that Plaintiffs must also log out of their "ready and available" status within one minute of the end of their scheduled shift.

21.   The log-out process consists of operating certain computer programs which log the actual time that Plaintiffs leave their "ready and available" status and which log the actual time of day that Plaintiffs return to their "ready and available" status; and which also logs

the actual time that the programs closes and the systems logs Plaintiffs out, after the "ready and available" status is logged out.

22.   The telephone calls taken by Plaintiffs are from live customers who typically express various concerns about the customers' service.   The calls typically last an average of 5-30 minutes.

23.   As a result, Plaintiffs frequently are still involved with a telephone call at the end of their scheduled shift time.

24.   Nonetheless, Plaintiffs are required to log out from their "ready and available" status, within one minute of their scheduled shift time; and to complete the call.

25.   If Plaintiffs wish to be compensated for the time they have worked beyond their scheduled shift status, they must then fill out by hand a piece of paper, setting forth the amount of time they continued to work beyond their scheduled shift, and submit it to their supervisor.

26.   Plaintiffs and the other employees are only paid overtime if they manually fill out this form, even though Defendants have a contemporaneous electronic record of the actual time that Plaintiffs log out of their "ready and available" status, after their scheduled shift time; and Defendants have a contemporaneous electronic record of the actual time that Plaintiffs close their programs.

27.   Plaintiffs and the other employees have been required to manually request to be paid for all time beyond their scheduled shift, or they were not paid for that time worked.

   *i.*      ***Defendants' Practice of Rounding Clocked Time***

28. While working for Defendants during the last three years, Plaintiffs were instructed by their supervisors to arrive early, before their scheduled shift time, in order to turn on the mechanical equipment they use and to boot up a variety of software programs used in their work, so that the equipment is operational at the start time of their regularly scheduled shifts.

29. While working for Defendants during the last three years, Plaintiffs would regularly arrive for work and begin working before the start time of their scheduled shift.

30. While working for Defendants during the last three years, Plaintiffs regularly logged out within one minute of their scheduled shifts.

31. While working for Defendants during the last three years, Plaintiffs regularly performed work after the end time of their scheduled shifts, including but not limited to finishing calls in which they were involved at the end of the time of their scheduled shift.

32. During the FLSA statutory recovery period, Defendants have had records of the actual time when Plaintiffs and their coworkers actually finished calls in which they were involved at the time of and after the end of their scheduled shift time.

33. Defendants did not use those records for calculating Plaintiffs' and their coworkers' compensation.

34. Instead, the scheduled shift times, not the actual times, were then used to calculate and process payroll for Plaintiffs.

35. During the last three years, Plaintiffs and putative class members were regularly not paid for the additional overtime work performed prior to the start time of their scheduled shifts.

36. During the last three years, Plaintiffs and putative class members were not regularly paid for the additional overtime work performed after the end time of their scheduled shifts.

37. Plaintiffs LaMarr and Wagner estimate that they often worked approximately a minimum of two or more hours per work week of unpaid overtime. Evidence in the form of records indicating some of the time that Plaintiffs worked is in the exclusive possession and control of Defendants.

38. Defendants' practice of failing to pay for time worked pre-shift and post-shift and instead rounding the time for which it would compensate Plaintiffs to their scheduled shift time is wide-spread and has occurred for a significant period of time during the last three years.

39. The identity of the employees who worked prior to and after their scheduled shift times can be determined from the log out records themselves, which are required to be kept by the Defendants pursuant to 29 C.F.R. § 516 and the FLSA.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT – OVERTIME WAGES

**(Brought as a Collective Action by Plaintiffs Jackie LaMarr and Doretta Wagner, on Behalf of All Others Similarly Situated)**

1-39. Plaintiffs re-allege Paragraphs 1 through 39 as and for Paragraphs 1 through 39 of this Count I.

40. Plaintiffs bring this count as a collective action on behalf of themselves and other similarly situated persons pursuant to 29 U.S.C. §216(b) to recover unpaid overtime wages, liquidated damages, attorneys' fees and costs, and other damages owed.

41.    Plaintiffs and the putative class members are hourly-paid, non-exempt, full-time employees whom Defendants employed at call centers during the three year statutory period and whose daily log- in and log-out time was rounded and/or unpaid as described above.

42.    The proposed collective class of similarly situated persons is defined as:

> "All individuals who were and/or are currently employed by the Defendants, their subsidiaries, affiliates, predecessors and/or successors, as call center employees or other similarly titled positions at any time during the relevant statute of limitations whose actual log-in and log-out times were rounded to their detriment."

43.    Common questions of law and fact exist as to all members of the class and predominate over any questions that affect only individual members of the class.   These common questions of law and fact include:

   i)   whether Defendants improperly rounded the actual log-in and log-out times for employees; and

   ii)  whether Defendants improperly failed to pay employees for time worked prior to or subsequent to their scheduled shifts.

44.    Defendants operated under a scheme and practice, as described above, to deprive Plaintiffs and the collective class of overtime compensation and thereby increase their earnings and, ultimately Defendants' profits.

45.    Section 207(a)(1) of the FLSA requires that an employee must be paid overtime, equal to at least one and one half times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

46.    Plaintiffs and the putative class members were not paid for all hours worked in excess of 40 in a week, in violation of the maximum hours provisions of the FLSA, 29 U.S.C. 207(a).

47.   While working for Defendants, Plaintiffs and members of the putative class were subject to the control of Defendants and engaged in activities that were not undertaken for their own convenience, that were necessary for the performance of their duties for Defendants, and that were integral and indispensable to their principal activities.  Despite this, Plaintiffs and other members of the collective class regularly were required to work "off the clock" as set forth herein that entitled them to compensation therefore.

   a       Defendants required and/or permitted Plaintiffs and the putative class members to work off the clock prior to the beginning of the call-center employee's scheduled shift.

   b.      Defendants required and/or permitted Plaintiffs and the putative class members to remain on duty on the premises or at a prescribed work site and engage in work related activities after they were logged-out and off the clock, in the interest of the employer.

48.   Defendants' rounding practices violated the overtime provisions of the FLSA because Defendants did not pay the overtime wages for all work performed by Plaintiffs and the similarly-situated employees.

49.    Defendants' rounding practices as set forth herein violate the record-keeping requirements set forth in Section 29 U.S.C. § 211(c), and in 29 C.F.R. § 516.2(7)-(9).

50.   At all times relevant hereto, the action of Defendants to not pay overtime or premium pay for all hours worked over 40 in a week and their failure to keep accurate payroll records was willful in that Defendants knew that the FLSA required them to pay time and one-half for all hours worked over 40 in a workweek and Defendants knew that the FLSA required them to maintain true and accurate records.

51.    As a direct and proximate result thereof, Plaintiffs and similarly situated call-center employees are due unpaid overtime and liquidated damages, pursuant to 29 U.S.C. § 216.

52.   Plaintiffs request that the Court authorize notice to the members of the collective class to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. §216(b), for the purpose of seeking unpaid overtime compensation, liquidated damages under the FLSA, and the other relief requested herein.

53.   Plaintiffs estimate that there are at least hundreds (300) putative members of the collective class.   The precise number of collective class members can be ascertained by using Defendants' payroll and personnel records.

WHEREFORE, Plaintiffs Jackie LaMarr and Doretta Wagner pray for judgment against Defendants, jointly and severally, as follows:

A.   Authorize notice at the earliest possible time informing the similarly situated call-center employees that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they worked regular hours or overtime hours in excess of forty hours in a week during the liability period;

B.   Order the Defendants to furnish to counsel a list of all names and last known addresses of all non-exempt hourly-paid employees employed by Defendants who currently or previously worked for Defendants in the United States within three years of the filing of the original Complaint, and whose time was rounded to their detriment;

C.   Declare and find that the Defendants committed one or more of the following acts:

i.   Violated overtime provisions of the FLSA by failing to pay overtime wages to Plaintiffs and similarly situated persons who opt-in to this action; and

ii.   Willfully violated the overtime provisions of the FLSA; and

iii. Willfully violated the record keeping provisions of the FLSA;

D.   Award compensatory damages, including all pay owed, in an amount according to proof;

E.      Award liquidated damages on all compensation due accruing from the date such amounts were due;

F.      Award all costs and reasonable attorneys' fees incurred in prosecuting this claim; and

G.      For such further relief as the Court deems just and equitable.

## COUNT II
## VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW

**(Brought as a Rule 23 Class Action by Plaintiffs Jackie LaMarr and Doretta Wagner, Individually and on Behalf of All Others Similarly Situated)**

1-53.  Plaintiffs re-allege Paragraphs 1 through 53 as and for Paragraphs 1 through 53 of this Count II.

54.  Section 105/4(a) of the IMWL requires employers to pay employees one and one half times their regular rate for all hours worked over 40 per work week.  Section 105/12 provides that employers who violate the provisions of this act are liable to affected employees for unpaid wages, costs, attorney's fees, damages of 2% of the amount of any such underpayment for each month following the date of underpayments and for other appropriate relief.

55.  This Count arises from Defendants' willful violation of the IMWL for Defendants' failure to pay Plaintiffs and the class all their earned minimum wages and overtime wages under the provisions of the IMWL. Plaintiffs and the class are current and former employees of Defendants who are due, and who have not been paid, minimum wages and overtime wages for all time worked by them.

56.    Defendants violated the IMWL by regularly and repeatedly failing to properly compensate Plaintiffs and similarly-situated employees for the straight time and overtime they worked each week.

57.    The proposed class of similarly situated persons is defined as:

> All individuals who were or are currently employed by Defendants, their subsidiaries, affiliates, predecessors and/or successors, as call-center employees or other similarly titled positions in the State of Illinois at any time during the relevant statute of limitations whose actual log-in and log-out times were rounded to their detriment."

58.    Defendants' failure to compensate Plaintiffs and the putative class for the full amount for all time worked violates Section 4(a) of the IMWL. 820 ILCS 105/4(a).

59.    Count II is brought pursuant to Fed. R. Civ. P. 23(a) and 23(b) because the class of plaintiffs is so numerous that joinder of all class members is impracticable.

60.    The class representatives and the putative class members have been equally affected by Defendants' failure to pay overtime wages.

61.    Furthermore, those putative class members still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

62.    The issues involved in this lawsuit present common questions of law and fact, specifically:

> i.    Whether Defendants' call center employees were required and/or permitted to arrive early to work before the start of their scheduled shift times and/or remain at the workplace past the end of their scheduled shift times in order to complete telephone calls, process orders and related work; and
>
> ii.    Whether the putative class members were unpaid for their pre-shift and post-shift work.

65.  These common questions of law and fact predominate over the variations which may exist between members of the class, if any.

66.  The class representatives, the class members, and Defendants have a commonality of interest in the subject matter and remedy sought.

67.  The class representatives are able to fairly and adequately represent and protect the interests of the class.  If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to class members, to the Court, and to the Defendants.

68.  Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

WHEREFORE, Plaintiffs Jackie LaMarr and Doretta Wagner pray that this Court award the following relief under Count II:

A.  Certify a class of individuals who were employed by Defendants as hourly-paid non-exempt call center employees in the State of Illinois at any time during the relevant statute of limitations period;

B.  Declare and find that the Defendants committed one or more of the following acts:

i.  Violated provisions of the Illinois Minimum Wage Law, 820 ILCS §105 *et seq*., by failing to pay minimum wages to Plaintiffs;

ii.  Violated overtime provisions of the Illinois Minimum Wage Law, 820 ILCS §105 *et seq*., by failing to pay overtime wages to Plaintiffs; and

iii.  Willfully violated minimum wage and overtime provisions of the Illinois Minimum Wage Law, 820 ILCS §105 *et seq*.

C.      Award compensatory damages, including all regular and overtime pay owed, in an amount according to proof;

D.      Award interest on all regular and overtime compensation due accruing from the date such amounts were due;

E.      Award all costs and reasonable attorney's fees incurred prosecuting this claim; and

F.      For such further relief as the Court deems just and equitable.


**COUNT III**
**VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT**

**(Brought as a Class Action by Plaintiffs Jackie LaMarr and Doretta Wagner, Individually and on Behalf of All Others Similarly Situated)**

69.    Plaintiffs re-allege Paragraphs 1 through 53 as and for Paragraph 69 of this Count II.

70.    Plaintiffs, individually and on behalf of all others similarly situated, bring this Count III to recover from Defendant unpaid wages, overtime compensation, statutory penalties, attorneys' fees, and costs, pursuant to Section 14(a) of the Illinois Wage Payment and Collection Act, 820 ILCS § 115/14(a).

71.    The proposed class of similarly situated persons is defined as:

> All individuals who were or are currently employed by Defendants, their subsidiaries, affiliates, predecessors and/or successors, as call-center employees or other similarly titled positions in the State of Illinois at any time during the relevant statute of limitations whose actual log-in and log-out times were rounded to their detriment."

72.    At all times relevant, Defendant has been an "employer," as that term is defined by Section 2 of the IWPCA, 820 ILCS § 115/2, of the Plaintiffs and members of the putative IWPCA Sub-Class.

73.   At all times relevant, Plaintiffs and the members of the putative IWPCA Sub- Class have been "employees" of Defendant, as that term is defined by Section 2 of the IWPCA, 820 ILCS § 115/2.

74.   At all times relevant, and at Defendants' request, Plaintiffs and the members of the putative IWPCA Sub-Class performed work for Defendants before and after their scheduled shift.

75.    At all times relevant hereto, Defendants were aware that its hourly call center employees performed services before and after their scheduled shift, on a routine basis.

76.    The task of performing and completing telephone calls and order processing services before and after their scheduled shift is an essential component of Defendants' business operations.

77.   Defendants at all times considered the tasks performed by call center employees before and after their scheduled shifts to be compensable work, had that same work been performed during their scheduled shift.

78.   Defendants' policies and employee handbook permits and/or requires its employees to perform work for Defendants before and after their scheduled shift, and requires that its employees be paid for all work they perform.

79.    Defendants' managers often observed call center employees performing work for Defendants before and after their scheduled shift, and often assisted them in performing that work.

80.   Under Defendants' policy and practice, Defendants required Plaintiffs to be present for work before and after their scheduled shift, on a daily basis.

81. Defendants' business records reflected data allowing Defendants to see and know that hourly employees routinely performed work for Defendants before and after their scheduled shift.

82. Defendants could see and know that hourly employees routinely performed work for Defendants before and after their scheduled shift.

83. Defendants did not instruct Plaintiffs and similarly situated employees to not perform work for Defendants before and after their scheduled shift, but only to log out or not log on at such times.

84. Defendant permitted and/or required its hourly employees to perform call center duties after the end of their scheduled shift time but before they were allowed to go home or otherwise engage in non-work activities.

85. By knowing of, permitting and/or requiring hourly employees to perform call center duties for Defendants before and after their scheduled shift, Defendants assented to hourly employees performing call center duties after the end of their scheduled shift times.

86. Defendants assented to pay Plaintiffs and the members of the putative IWPCA Sub-Class at an agreed-upon hourly rate at or in excess of the applicable Illinois Minimum Wage hourly rate, for all work Defendants permitted and/or required, including at 1.5 times their regular hourly rate for all time beyond 40 hours worked in a week.

87. Defendants assented to the hourly employees performing call center duties before and after their scheduled shifts by, among other means, Defendants' knowledge and awareness of those duties being performed at those times,

88.   Defendants assented to the hourly employees performing call center duties before and after their scheduled shifts by, among other means, Defendants' policy and practice of permitting and/or requiring hourly employees to perform call center duties before and after their shifts, and before and after they had logged in or out.

89.   Defendants assented to the hourly employees performing call center duties before and after their scheduled shifts by, among other means, the lack of any instruction or meaningful effort by Defendants to forbid or not allow the call center employees to perform call center duties before or after their scheduled shifts.

90.   Defendants assented to the hourly employees performing call center duties before and after their scheduled shifts, among other means, through employee manuals and other directives distributed at and after an employee's orientation period that informed Plaintiffs and the members of the putative IWPCA Sub-Class that they must perform duties before and after their scheduled shifts.

91.   Defendants also demonstrated their assent to the work by actually participating in pre- and post-shift work through the attendance of a management-level employee who would accompany Plaintiffs and the members of the putative IWPCA Sub-Class to perform duties before and after their scheduled shifts.

92.   Defendant regularly observed, without objection or negative comment, the record and documentation of having Plaintiffs and the members of the putative IWPCA Sub-Class perform pre- and post-shift work, through their review of the scheduling and performance logs and other documentation of performing pre- and post-shift work.

93.    Defendants required, as part of their Policy Manual that Plaintiffs and the members of the putative IWPCA Sub-Class perform pre- and post-shift duties.

94.    At all times relevant hereto, Defendants considered pre- and post-shift duties to be work.

95.    When Defendants hired Plaintiffs and the members of the putative IWPCA Sub- Class and advised them of the specific hourly rate they would be paid for all work performed by them, Defendants did not inform Plaintiffs and the members of the putative IWPCA Sub-Class that they would not be paid for the pre- and post-shift duties they performed.

96.    Defendants have failed to pay Plaintiffs and the members of the putative IWPCA Sub-Class the full amount due for all time worked on their regularly scheduled paydays, including but not limited to their final compensation, because Defendant did not pay them for the pre- and post-shift work described herein, in violation of the IWPCA, 820 ILCS § 115/4.

97.    Defendants have failed to pay Plaintiffs and the putative class the full amount for all hours worked because of the improper practices described herein.

98.    Illinois Statutes 820 ILCS §§115/1 *et seq.* defines wages as "any compensation owed to an employee by an employer pursuant to an employment contract or agreement between the two parties...".

99.    Under the IWPCA, payment to separated employees is termed "final compensation" and is defined as "wages, salaries, earned commissions, earned bonuses...and any other compensation owed the employee by the employer pursuant to any employment contract or agreement between the two parties." 820 ILCS § 115/2.

100.   Illinois Statutes 820 ILCS §115/4 requires employers to pay employees all wages earned by an employee during a semi-monthly or bi-weekly pay period no later than 13 days after the end of the pay period in which such wages were earned. Illinois Statutes 820 ILCS §115/5 provides that "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly schedule payday for such employee."

101.   Defendants violated Illinois Statutes 820 ILCS §§115 et seq. by regularly and repeatedly failing to properly compensate Plaintiffs and the putative Illinois class members for the actual time they worked each week within 13 days of the date such compensation was earned and by failing to properly compensate Plaintiffs and class members their rightful wages by the next scheduled payday after their separation.

102.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer lost wages and other damages.

103.   Plaintiffs and the members of the putative IWPCA Sub-Class have been damaged by not being paid the full amount of wages due to them for all time worked, in an amount not presently ascertainable, for the relevant time period.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, demand a trial by jury on this and all counts so triable, and pray that this Court award them the following relief under Count III:

(a)  certify the class defined in paragraph 71 pursuant to Fed. R. Civ. P. 23;

(b)  award Plaintiffs all unpaid wages they earned, plus applicable statutory penalties;

(c)  award Plaintiffs their attorneys' fees and costs; and

(d)  grant such further relief as this Court deems equitable and just.

JURY DEMANDED ON ALL COUNTS

Date: September 30, 2015

<div style="margin-left: 50%">

**Respectfully Submitted,**
**JACKIE LAMARR AND DORETTA**
**WAGNER,**
**Individually and on Behalf of**
**All Others Similarly Situated.**

By: /s/ Glen J. Dunn
        Glen J. Dunn
        One of Plaintiffs' attorneys

</div>

| | |
|---|---|
| Jeffrey Grant Brown | Glen J. Dunn, Jr. |
| Jeffrey Grant Brown, P.C. | Glen J. Dunn & Associates, Ltd. |
| 221 North LaSalle Street, Suite 1414 | 221 North LaSalle Street, Suite 1414 |
| Chicago, IL 60601 | Chicago, IL 60601 |
| 312.789.9700 | 312.546.5056 |